UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| IN RE: SKS CONSTRUCTION, INC. | ) | Case No. 21-31862-KLP |
| | ) | |
| Debtor. | ) | Chapter 11 |
| | ) | |
| SKS CONSTRUCTION, INC. | ) | |
| Plaintiff, | ) | |
| v. | ) | Adversary Proceeding |
| | ) | No. 21-03097-KLP |
| GARDNER STATION, LLC | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO STRIKE
DEFENSES AND FOR SUMMARY JUDGMENT**

SKS Construction, Inc. ("<u>SKS</u>"), Debtor and Plaintiff in the above-captioned matter, states as follows as its Memorandum in Support of Motion to Strike Defenses and for Summary Judgment:

**INTRODUCTION**

This is a construction case in which it is undisputed based upon the Defendant's own post-project "Financial Review" that $144,550.55 was the net amount owed to SKS prior to the Defendant's alleged deductions for "penalties and repairs" and other items. *See* Defendant's "Gardner Daycare Financial Review," **Exhibit 1**, produced by

---
David K. Spiro (VSB# 28152)
David G. Browne (VSB# 65306)
Spiro & Browne, PLC
2400 Old Brick Road
Glen Allen,Virginia  23060
Telephone:      (804) 573-9220
Facsimile:       (804) 836-1855
E-mail:           dbrowne@sblawva.com
*Counsel for the Debtor/Plaintiff*

Defendant in discovery and represented in discovery as their accounting of the project. Defendant seeks to recoup or set off this acknowledged and undisputed "top line" amount owed of $144,550.55 in this action based upon "deductions repairs" set forth on that document. For the reasons set forth herein, Defendant is barred from asserting any setoff or recoupment because the Confirmation Order in the underlying bankruptcy case (to which they never objected) bars it from doing so, such claims by Defendant were never otherwise preserved via a proof of claim or any other mechanism, and additionally as to setoff because it never sought or obtained relief from the automatic stay to assert setoff claims or defenses despite acknowledging from the outset of the case that this would be necessary to assert such defenses.

Defendant further asserts in its Answer that the Plaintiff's claims may be barred by the three-year statute of limitations applicable to unwritten contracts and quantum meruit claims arising under Virginia law. The undisputed timeline of events is that following completion of work by SKS on the project in the spring of 2018, Defendant's representatives – including the Vice President and project manager identified as such by Defendant – acknowledged that amounts consistent with the amount now sought remained due and owing to SKS for its work, and would be paid in the future as funds became available. Evidence of these acknowledgments and promises to pay the balance owed to SKS includes e-mails from the Defendant's project manager on June 25, 2018 and July 12, 2018 in which the project manager acknowledged that sums were due and owing to SKS and would be forthcoming. *See* E-mails of June 25, 2018 and July 12, 2018 from Chris Hornung, **Exhibit 2.** The petition in the underlying bankruptcy case was filed on June 9, 2021, less than three years after these representations by Defendant's

representative. There is therefore no material dispute that an acknowledgment of the debt and a promise to pay SKS was made or implied on or about these dates, and thus at a minimum the tolling provisions of Va. Code § 8.01-229(G) would apply and Plaintiff's case was timely filed. These representations of forthcoming payment by Defendant also clearly demonstrate a delayed accrual of the causes of action themselves, as refusal by Defendant to pay sums owed did not occur until later, and well within three years of the bankruptcy petition date.

Finally, Defendant asserts that SKS cannot seek recovery on its breach of contract claim because it committed a "first breach." This defense has no applicability to SKS's quantum meruit count, but even as to the contract count, it is unsupportable under the undisputed facts and law of the case which clearly show that there were no material breaches by SKS, and any breaches by SKS were waived by Defendant because it is undisputed that Defendant allowed SKS to continue working, complete its work on the project, and ultimately accept the work by SKS. It is also well-established under Virginia law that the "first breach" rule is not a bar to contractual recovery in construction cases where, as here, the contracted project was actually completed and no bad faith actions occurred.

FRCP 56 provides that "[a] party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The uncontroverted facts of this case are that SKS performed the work agreed upon, or which conferred benefit upon Defendant by its own admission. It is

further undisputed, and Defendant by its own accounting agrees, that $144,550.55 was owed to SKS after completion of work by SKS. Defendant cannot possibly prevail on any of the defenses that it seeks to employ to reduce or extinguish this amount due and owing, based upon the undisputed record, and thus summary judgment should be entered in favor of SKS for $144,550.55.

## ARGUMENT

### I. The Defenses of Setoff and Recoupment are Barred by the Confirmation Order

Defendant is categorically enjoined by the Court's November 17, 2021 Confirmation Order [Bankruptcy Case Docket No. 81] from asserting any setoff or recoupment against SKS. More specifically, paragraph 18 of the Confirmation Order contains an injunction provision which provides in pertinent part that:

> from and after the Confirmation Date all persons who have held, hold, assert or asserted or may hold Claims against or interests in the Debtor, its Estate, any of its property or assets on account of any such actual or asserted Claims or Administrative Claims that arose before the Effective Date are permanently enjoined from …(d) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability and/or obligation due to the Debtor; …

It should be further noted that this adversary proceeding was filed on September 10, 2021, at approximately the same time as the Plan was first filed (September 7, 2021), well before the deadline to object to confirmation, and well before a confirmation hearing date was even scheduled. Defendant was obviously aware of the underlying bankruptcy case, and the fact that it was a Chapter 11 case, based on the adversary proceeding. Defendant did not object to any aspect of the plan or confirmation order, file any claim, request any carve-out or alternative treatment under the Plan, or take any action

whatsoever to assert or preserve any claimed setoff, recoupment, or other claim against the Debtor.

Courts have consistently held that a bankruptcy court's order of confirmation is treated as a final judgment with *res judicata* effect. *See Stoll v. Gottlieb,* 305 U.S. 165, 170-171, 59 S.Ct. 134, 83 L.Ed. 104 (1938); *In re Varat Enterprises, Inc.,* 81 F.3d 1310, 1315 (4th Cir.1996); *Piedmont Trust Bank v. Linkous,* 990 F.2d 160, 162 (4th Cir.1993). In analyzing the preclusive effect of a plan confirmation order, the Fourth Circuit Court of Appeals held that "parties may be precluded from raising claims or issues that they *could have or should have raised* before confirmation of a bankruptcy plan, but failed to do so." *In re Varat,* 81 F.3d at 1315 (emphasis added). Moreover, federal courts have consistently applied *res judicata* and waiver principles to bar a party from asserting a legal position after failing, without reason, to object to the relevant proposed plan or to appeal the confirmation order. *Id.* Furthermore, '[t]he provisions of a confirmed plan bind the debtor and each creditor, *whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.*" *In re Jones*, 2007 WL 1725593 (Bankr. N.D. Ala.) *13 (emphasis added). See also *In re Graves,* 2007 WL 824059 (Bankr. N.D. Ala.) *6-*9.

For these reasons alone, any claim or defense based upon setoff or recoupment by the Defendant is categorically barred by the Confirmation Order's injunction provision, and should be either stricken or subject to summary judgment in favor of Plaintiff.

## II. Defendant Cannot Assert Setoff as it has not Sought or Obtained Relief from the Automatic Stay

In addition to the Confirmation Order's injunction, the automatic stay created by the Bankruptcy Code prohibits any attempts by Defendant to exercise setoff rights. *See* 11 U.S.C. § 362(a)(7). Defendant has never sought or obtained relief from or modification of the stay (or the discharge injunction which is now final) to assert setoff rights, despite acknowledging both within and outside its pleadings that it would need to do so in order to assert setoff, and accordingly cannot assert setoff now in this adversary proceeding. *See, e.g.*, Answer ¶¶ 26-27. Any claim or affirmative defense based upon setoff should therefore be stricken, or summary judgment entered in favor of SKS upon such claim or affirmative defense.

## III. Recoupment and "First Breach" Defenses Cannot Apply to Plaintiff's Quantum Meruit Claim

Even if the Confirmation Order did not bar them, Defendant cannot assert recoupment or "first breach" defenses to Plaintiff's quantum meruit claim, as these defenses would apply by definition only to the breach of contract count. *See* Va. Code § 8.01-422 (defining recoupment as a defense in contract actions); "first breach" by definition is a legal defense to breach of contract and does not apply to the equitable remedy of quantum meruit. Defendant admits in its Answer ¶ 14 that the work performed by SKS conferred a benefit, and effectively admits the value of that work in **Exhibit 1**. There is therefore no genuine dispute that SKS is, at a minimum, owed $144,550.55 in quantum meruit, which cannot be reduced.

### IV. "First Breach" Defense is Not a Bar to Contract Recovery in Construction Cases

Defendant's "first breach" defense categorically fails as to the breach of contract claim as well. The undisputed facts are that SKS completed or substantially completed the work it was asked to perform by the Defendant[1], and Defendant's main complaint appears to be that it was not completed quickly enough to suit the Defendant's desired schedule, despite there being no evidence whatsoever of any "delay damage" agreement between these two parties. Not only is there no evidence whatsoever of any "delay damages" agreement between the parties to this case, the Defendant undisputedly continued to ask and permit SKS to keep performing, and ultimately complete, its work – it never fired or kicked SKS off the job and asserted its right to terminate any agreement without penalty upon a "first breach."

In *Kirk Reid Company v. Fine,* 205 Va. 778, 139 S.E.2d 829 (1965), the Supreme Court of Virginia considered for the first time whether the first breach "no recovery" rule was applicable in construction contract cases. There, a contractor filed a suit to enforce a mechanic's lien, and the owner filed a cross-bill claiming damages for breach of contract. The court held that the contractor was entitled to recover, even though the contractor had departed from contract specifications. The court stated that "[t]he more recent annotation in 76 A.L. R.2d 805 and the cases there cited indicate a relaxation of the rigid rule enunciated by some of the earlier decisions. *This is especially true where the contractor*

---

[1] Defendant admits, for example, in ¶ 5 of its Answer, that "[a]ll work completed by SKS pursuant to the agreement passed all necessary inspections" as alleged in ¶ 9 of the Complaint. A number of e-mails produced by Defendant in discovery directly if begrudgingly admit that SKS performed its work, and merely express the frustration common in construction projects that it was not completed sooner.

*and owner assert offsetting claims against each other, or where the departures from the contract do not involve real instances of bad faith.*" *Id.* 205 Va. at 788-89, 139 S.E.2d at 836. (emphasis added). The Supreme Court of Virginia reaffirmed this holding in *Erlich v. Hendrick Construction Co., Inc.* 225 S.E.2d 665 (1976).

Defendant has yet to identify in its pleadings the actual nature of the alleged "first breach" and why it was "material." What is undisputed, however, is that SKS completed its work, all of which passed inspections, and Defendant allowed this to happen. There is no allegation, formal or otherwise, of any bad faith by SKS. Defendant's generically pleaded "first breach" defense cannot possibly serve as a bar to recovery in this case.

> **V. Defendant's Own Communications Prove that the Case is Not Barred by the Statute of Limitations**

Finally, the Defendant asserts in ¶ 27 of its Answer that the causes of action brought by SKS are barred by the three-year statute of limitations. *See* Va. Code § 8.01-246(4), applicable to both unwritten contracts and quantum meruit. Exactly when and how the Plaintiff's right(s) of action "accrued" is debatable given the oral nature of the contract at issue, but what is indisputable is that the Defendant's then-Vice President and project manager, Chris Hornung, made written representations and promises of payment to SKS upon the work at issue, and did so less than three years before the June 9, 2021 petition date. These written representations alone would toll the applicable statute of limitations long enough to make the filed action timely.

The relevant tolling provision of the Code of Virginia, § 8.01-229(G), provides as follows:

> G. Effect of new promise in writing.

8

> 1. If any person against whom a right of action has accrued on any contract, other than a judgment or recognizance, promises, by writing signed by him or his agent, payment of money on such contract, the person to whom the right has accrued may maintain an action for the money so promised, within such number of years after such promise as it might be maintained if such promise were the original cause of action. **An acknowledgment in writing, from which a promise of payment may be implied, shall be deemed to be such promise within the meaning of this subsection**.
>
> 2. The plaintiff may sue on the new promise described in subdivision 1 or on the original cause of action, except that when the new promise is of such a nature as to merge the original cause of action then the action shall be only on the new promise.

Defendant has stated in its written discovery responses that Chris Hornung was the project manager for the Defendant as it pertains to the project at issue. Mr. Hornung regularly corresponded with SKS, including regarding matters of payment being discussed after the work was complete. *See* **Exhibit 2.** During e-mail discussions on June 25, 2018, Mr. Hornung wrote to SKS:

> Jud has spoken with Jesse in our Florida office, and **they are working on a funding agreement to pay the balance due to SKS and its subcontractors instead of asking SKS to carry outstanding amounts until the next sale of property.** It looks like upon release of the escrow this week, we'll have approximately $193,000 to disburse to SKS's subs. We need you to provide us with a priority list for vendors to be paid so we can allocate the $193,000 where most critical to avoid liens and unfreeze your accounts.
>
> On July 12, 2018, Mr. Hornung stated:
>
> Larry and Jud have agreed to refund all monies that went to pay for the land out of the Daycare transaction. The land paydown was originally $388,000 and was reduced to $201,000 when they advanced $187,000 back in February. We have approximately $70,000 in other expenses that need to be paid (delay damages to daycare), **leaving around $130,000 that can be paid to SKS and its subcontractors. We'll need SKS to carry the balance until the next sale per our previous discussion.**

(emphasis added)

These written statements from Defendant's representative to SKS demonstrate unequivocally that Defendant (1) acknowledged and agreed that monies were still owed to SKS and (2) promised, expressly or impliedly, that payment would be forthcoming in the future. Because these written statements acknowledged the debt owed to SKS and made, at minimum, an implied promise to pay, they effectively reset the statute of limitations to within the three years prior to the bankruptcy petition. Defendant's plea to the statute of limitations is plainly unsupportable, and should be stricken, or in the alternative summary judgment should be entered in favor of Plaintiff as to this defense.

## CONCLUSION

For the foregoing reasons, Plaintiff SKS Construction, Inc. respectfully moves the Court to enter an order striking Defendant's "affirmative and other defenses," and grant Plaintiff summary judgment as to these defenses and in the amount of $144,550.55 against the Defendant, Gardner Station, LLC.

DATED: 3/28/2022

**SKS CONSTRUCTION, INC.**

By: _____/s/ David G. Browne_____
                    Counsel

David K. Spiro (VSB# 28152)
David G. Browne (VSB# 65306)
Spiro & Browne, PLC
2400 Old Brick Road
Glen Allen, Virginia  23060
Telephone: (804) 573-9220
Facsimile: (804) 836-1855
E-mail: dbrowne@sblawva.com
*Counsel for the Debtor/Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of March, 2022, a true and accurate copy of the foregoing Memorandum in Support of Motion to Strike Defenses and for Summary Judgment was filed via the ECF system and served thereby on all parties receiving notice via the ECF system.

_____/s/ David G. Browne_____