# Exhibit A to Memorandum in Opposition
Defense Trial Exhibit A - Answers to Interrogatories

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| In Re: | |
| SKS CONSTRUCTION, INC. | Case No. 21-31862-KLP |
| Debtor | Chapter 11 |
| SKS CONSTRUCTION, INC. | |
| Plaintiff | |
| v. | Adversary Proceeding |
| GARDNER STATION, LLC | No. 21-03097-KLP |
| Defendant | |

<u>RESPONSE TO FIRST DISCOVERY OF SKS CONSTRUCTION</u>

Gardner Station, LLC, by its indemnitor SH Partners, LLC, ("Defendant") responds to the First Discovery of SKS Construction, Inc. ("Plaintiff"), and says:

Answers to Interrogatories

1. Identify all individuals who supplied information to produce the answers to these Interrogatories, and state the nature of the information provided by each individual.

Answer: B. Judson Honaker, President, Commercial Development Silver Companies Regional Office, Metro Washington, D.B. and Steve Jones, VP, Leasing and Sales, Silver Companies Regional Office. Billie Dove, administrative assistant for Silver Companies, provided some of the information provided in answering these interrogatories to Messrs. Honaker and Jones.

Messrs. Honaker and Jones collaborated on all points in providing these interrogatory answers and since and the Defendant cannot identify a single source for this information.

Mr. Honaker acted as President of SH Partners LLC, Indemnitor to defendant Gardner Station, LLC throughout the project and Mr. Jones was also involved as a representative on the project. Mr. Chris Hornung, a former Siler employee, was project manager for SH Partners

    2.    State all terms, including price(s), timing, and scope of work, which you contend constitute the agreement or contract between the parties, as referenced in ¶ 16 of your Answer.

Answer:

There was no written contract between the parties.

There was an oral version of the equivalent of a letter of intent when (date not recalled). S H Partners through Mr. Honaker was planning for the development of property known as Gardner Station located in Gainesville, Virginia into a day care/pre-school facility. Steve Zuchowski of SKS had done site construction work for projects developed by Mr. Honaker before, but increasing problems with projects where SKS had been site contractor (low initial bids to get the contract, then followed by many requests for change orders increasing the price), resulted in Mr. Honaker reducing his business with SKS. When Mr. Zuchowski heard about the Gardner project he personally visited Mr. Honaker at Mr. Honaker's home and vigorously pursued the site work. Mr. Honaker told Mr. Zuchowski he would consider SKS, but the contract had to be on a fixed price/unclassified/no change order basis with strict compliance with scheduling requirements because that was an essential part of the deal for SH. Mr. Zuchowski agreed.

Mr. Zuchowski subsequently was told he was awarded the site work for the Garnder station project by communication from Chris Hornung around May 4, 2017. Shortly after that

date Mr. Zuchowski was in contact with Prince William County officials to discuss the project. Mr. Zuchowski was aware of the property on which the work was to be done when he met with Mr. Honaker at Mr. Honaker's residence and had ample time to inspect the property site to determine all pricing issues for the contract. Mr. Zuchowski was told the work would need to done on a time essential basis as SH was under contract with a third party, NLD Gainesville, LLC, as the owner of the project site on which SKS was to be site contractor and the work had to be done compliant with NLD's schedule. At the time of contract award to SKS, SH did not know of an outside completion date but estimated this as September, 2017 – basically a summer's work. SKS accepted the work on a time critical basis, with work to begin as soon as possible and to begin work as soon as possible and agreed to deliver the site with all site work completed as soon as possible but no later than September, The parties agreed to a fixed price of $946,225.00 for the site contractor work.

      Scope of work was:

(i) site level graded with buildable soils and all structures and vegetation removed with grading as shown on Seller's site plan; (ii) all access points (to public and private streets) shown on Seller's site plan for Purchaser's intended use as a child day care center (the "Intended Use"), are constructed; (iii) any offsite improvements (such as sidewalks, landscaping, etc.) are constructed as required by municipal authorities as a condition to issuance of a certificate of occupancy for Purchaser's Intended Use; provided however, that Purchaser shall be responsible for sidewalks and landscaping along Nolan Road; (iv) and any shared storm water detention or retention systems are sized adequately and extended to the Property's boundaries for Purchaser's Intended Use; (v) sanitary and water sized for Purchaser's Intended Use and extended to within 5' of the Property boundary; (vi) any work required by any governmental authority to the existing water draining facility; (vii) Seller will provide to Purchaser any and all engineering and site compaction reports for the Property in sufficient quantity and detail to ensure the appropriate fill and compaction of the soil material; and (viii) relocation of the existing overhead power line along Nolan Road underground with the exception of one terminal pole on the Property; which will not interfere with construction or operation of Purchaser's planned building. Purchaser shall have the right, at Purchaser's sole cost and expense, to inspect any of Seller's Work outlined in this section during or after completion of such work. All utility availability service and tap fees shall be the responsibility of the Purchaser. Purchaser shall grant any and all easements to Seller and its designees reasonably required in order for Seller to complete Seller's Work, such obligation to survive Settlement. Notwithstanding anything herein to the contrary, Seller will commence Seller's Work as soon as reasonably practical (but not later than fifteen (15) days) after receipt of

such permit to complete Seller's Work and complete such work within forty-five (45) days. The parties will work together using The Engineering Groupe, Inc. as the civil engineer to apply for and complete the plans for Seller's Work and Buyer's Intended Use for submittal to the County for approval as quickly and as reasonably possible. It is understood by the parties that time is of the essence for Seller's Work to be completed.

Since this was an oral contract there may have been other informal and minor terms that did not change any of the above principal points.

3. If you contend that SKS breached, defaulted, violated, or otherwise failed to perform any of its obligations under the agreement or contract specified in the prior Interrogatory (including, without limitation, in relation to your contentions in ¶¶ 27-28 of your Answer), state with specificity the nature of all such alleged breaches, defaults, or failures to perform, the date(s) on which they occurred, and specify the damages (if any) which you contend resulted from each such breach, default, or failure to perform. Include in your Answer the date on which you discovered the basis for your contention as to each such breach, default, violation, or failure to perform.

Answer: Plaintiff did breach its contract. Its progress in the summer of 2017 was very slow and caused concern with S H Partners and with NLD. This led to a warning letter from NLD on August 18, 2017, followed by a default notice email on September 7, followed by a September 12, 2017 letter from the property purchaser with a proposal on curing site contract failures to proceed satisfactorily, followed by a September 26 letter also on unsatisfactory site progress, followed by a formal default letter on November 10. This trend of delay continued with a December 27, 2017 email from SKS with a proposed time line for sewer install and a time line for the project; even as of the end of 2017 SKS had not finished its work and it still remained uncompleted on February 7, 2018 when the contract purchaser again noted lack of site progress

more than 4 months after the site work was to have been completed. So, SKS was in continued default from no later than September 30, 2017 for the remainder of the contract. SKS also breached the fixed price/no change order agreement terms under which it was awarded the contract in submitted without prior waiver of this agreement some four change orders, with camouflage names such as "Work Order," then "Proposed Work Worder," then, finally, "Change Order." S H Partners was required to write two party checks to pay some $400,000 in payments because of SKS's failures to pay its invoices. SKS was paid directly over $440,000. SKS's extraordinary failure in its failure to accomplish its work timely led directly to S H Partners paying delay damages to NLD Gainesville, the property purchaser, $100,000 for losses incurred by the delay plus another $33,000 for faulty sewer replacement work by SKS, plus $13,000 to Dominion Energy for SKS failures.

The original fixed price contract of $946,225 ended up with S H overpaying SKS by $1,990.43.

SKS was the first to breach, by not later than September 30, 2017, and thus is not entitled to any payment as the alleged breach by S H Partners

4. Identify and describe with specificity all setoffs, including the source, nature, and amount(s) of such setoffs, to which you claim to be entitled with respect to this case, as alleged in ¶ 26 of your Answer, including the date on which you discovered the basis for each such setoff.
Answer: Please see documents posted to Microsoft One Drive. Reference is made to all of these documents under Rule 9033, but accountings are highlighted for convenience with X- as a prefix.

5

However, Plaintiff should refer to all documents produced and the prefix of "X-" is provided only as a convenience.

5. State the amount, if any, which you contend was still due and owing by you to SKS as of May 1, 2018 on account of work performed by SKS at the Gardner Station project, <u>without regard to or deduction of</u> any alleged setoffs, recoupments, or other defenses or counterclaims.

Answer: Nothing at all. The defendant sued by SKS is Gardner Station, LLC, but SKS Construction had no construction contract with Gardner and the amount owed by Gardner to SKS, S H Partners having agreed to indemnify Gardner, is $0.00. SKS knew it had a construction contract with S H Partners and sent all of its payment draws to "Silver Companies" (S H Partners is one of the "Silver Companies"). Mr. Zuchowski met with Mr. Honaker, who is well known to be affiliated with the Silver Companies and his last name, Honaker, provides the "H" in S H Partners LLC. SKS, to the knowledge of S H Partners, NEVER sent any invoices to Gardner Station for site work and the complaint reflects no allegation that any of the "Silver Companies," and particularly S H Partners, had a construction contract with the Plaintiff.

Reserving this point, if SKS had sued S H Partners, then, accepting for argument's sake only and given the way this interrogatory is phrased, while the response is grossly inaccurate as a measure of a proper sum due, the arithmetic is simple: $946,225 fixed original price, less payments to SKS or to its vendors in the sum of $847,845, results in a figure of $98,380. This is a legally improper number because it requires ignoring the numerous defaults and delays of SKS and monies S H Partners had to pay out because of SKS failures to perform but we are answering your interrogatory as you have phrased it.

GARDNER STATION, LLC
by and through its Indemnitor SH Partners, LLC

By: _____
Title: Authorized Representative
Printed Name: B. Judson Honaker

## UNSWORN DECLARATION UNDER PENALTY OF PERJURY

1. I am B. Judson Honaker, authorized representative of SH Partners, LLC

2. The answers to the above interrogatories are true to the best of my knowledge.

Under 28 U.S.C. § 1746, I declare and certify under penalty of perjury that the foregoing is true and correct.

Dated: March 10, 2022

Signature: _____